**BEANE et al. v. RUCKER et al.**

No. 5993—Opinion Filed Nov. 27, 1917.

(168 Pac. 1167.)

**1. Chattel Mortgages — Suit to Enjoin Foreclosure—Sufficiency of Petition.**

In a suit by a landlord against a tenant and his mortgagee seeking to enjoin the foreclosure of a chattel mortgage upon the furniture of a hotel, a petition merely alleging the execution of a lease, the occupation of the premises by the tenant of a hotel, and the effect of the foreclosure, fails to state a cause of action, and demurrer should have been sustained.

**2. Landlord and Tenant—Landlord's Lien —Statutes.**

Section 3809, Revised Laws 1910, formerly section 4101, Compiled Laws 1909, does not give the landlord of a building leased for hotel purposes a lien upon the the furnishings to secure the payment of his rent, but merely affords an additional ground for attachment of which he may avail himself to enforce the collection thereof.

(Syllabus by Hooker, C.)

Error from District Court, Rogers County; T. L. Brown, Judge.

Suit by J. G. Rucker and F. M. Rucker, copartners doing business as Rucker Bros., against B. C. Beane and others. Demurrer to petition overruled, and defendants bring error. Reversed and cause remanded, with directions to sustain the demurrer.

A. J. Biddison and Harry Campbell, for plaintiffs in error.

Adams & Wills and Randolph, Haver & Shirk, for defendants in error.

Opinion by HOOKER, C. In the petition filed in the lower court the plaintiffs alleged that they were the owners in fee simple of the real estate named therein upon which they had erected a hotel building to be used and operated as such; that on the 27th day of October, 1909, they entered into a lease contract with the defendants, E. M. Brown, B. C. Beane, and J. P. Mason, a copy of which contract they filed as a part of the petition; the name of B. C. Beane did not appear on said contract, but that he, the said B. C. Beane, was in truth and in fact a partner of the said E. M. Brown and J. P. Mason, at the time of the execution of said contract, and that he, the said B. C. Beane, assumed, as lessee, all the obligations and liabilities

therein provided on the part of the lessees, and that ever since the making of said contract the said B. C. Beane has been one of the lessees therein; that in said contract it was specially provided that said building should be operated and occupied by said lessees as a hotel, and the same was by them furnished, equipped, and maintained throughout as such a hotel at their own cost during the life of said lease, and that in pursuance to said contract said lessees did furnish and equip said hotel throughout at their own cost; that on the 5th day of May, 1911, and while the said hotel was being occupied and operated by said defendants E. M. Brown and B. C. Beane, they made and executed to the Brown-Beane Company their certain promissory notes for $10,000, and secured the payment of the same by a chattel mortgage upon all the furniture in said hotel; that on the 15th day of November, 1911, the said mortgagee declared all of said notes due and exercised its option therein provided to foreclose said mortgage, and did then and there post notices of said sale to be held at said hotel by said mortgagee on the 29th day of November, 1911, a copy of which notice is made a part of the petition; and that by virtue thereof the mortgagees would sell at public sale to the highest bidder for cash all of said furniture on the date aforementioned.

It is further alleged therein that the sale and removal of said furniture and equipment from the hotel is and will be in violation of said lease contract, and will cause said hotel to be closed indefinitely, not open for the reception of guests or for the purpose of carrying on a hotel for which the said building was erected, leased, and furnished.

And it is further alleged that the mortgage referred to above is not a valid moregage or a subsisting lien upon any of the property described therein for the reason that the Brown-Beane Company, the mortgagee therein, is, and was at the time of the execution of said mortgage, owned, controlled, and operated solely and absolutely by the said E. M. Brown and B. C. Beane, and that they are the owners of all of the capital stock of said company, and that by reason thereof the giving of said mortgage by the said E. M. Brown and B. C. Beane was the execution of a mortgage to themselves, and that there was in truth and in fact no debt existing between them and the Brown-Beane Company, and consequently no obligation on the part of the said E. M. Brown and the said B. C. Beane to pay the said mortgagee any sum whatsoever; that the said mortgage was given, not for the purpose of securing any debt or obligation between said parties, but was given designedly and purposely so that said furniture could be taken and removed from the said hotel by the mortgagee, and thus enable the said E. M. Brown and B. C. Beane to abandon the hotel and cease to operate the same, which the said E. M. Brown and B. C. Beane have frequently since the execution of said mortgage and prior to the attempt to foreclose the same threatened to do, but which plaintiffs have at all times refused to permit; that the sale and removal of said furniture from the hotel as advertised would be sold on the 29th day of November, 1911, will cause the plaintiffs great and irreparable injury, as the same would result in the closing of said hotel, and be a violation of the lease contract, as the hotel could not be refurnished for 30 or 60 days, during all the time the same would be closed to the trade and to the public, thereby materially depreciating its value, etc. Wherefore the plaintiffs prayed that the mortgagees, their attorneys and agents, be restrained from offering said property for sale under said chattel mortgage foreclosure on the 29th day of November, 1911, or any future date, and that they be restrained and enjoined from removing any of the furniture from said hotel during the life of said lease, and for all other proper and equitable relief.

The lease contract was signed by Rucker Bros., as lessors, and Mason and Brown, as lessees, and by the terms thereof the real estate involved here was leased for a period of five years from January 1, 1910, to be used, occupied, and operated by the lessees as a hotel, and the same was to be furnished, equipped, and maintained throughout by the lessees at their own cost in a modern and up-to-date manner, and be maintained in such condition during the life of the lease, natural wear and tear of the building and damage caused by the elements excepted.

A demurrer was filed to this petition by B. C. Beane, and overruled, to which an exception was saved, and the defendants elected to stand thereon, and appealed to this court.

It is asserted by the defendants in error that they are entitled to this injunction to protect their property rights and their contract rights in the premises; that under the terms of the contract here rent was due

and was to become due to them for the lease of said building, and in order to enable them to collect the same they were entitled to the aid of a court of equity to restrain the lessees from removing their property from the leased premises, for that under the law of the state of Oklahoma it is provided:

"When any person who shall be liable to pay rent (whether the same be due or not, if it be due within one year thereafter, and whether the same be payable in money or other things) intends to remove, or is removing, or has, within thirty days, removed his property, or his crops, or any part thereof, from the leased premises, the person to whom the rent is owing may commence an action, and upon making an affidavit stating the amount of rent for which such person is liable, and one or more of the above facts, and executing an undertaking as in other cases, an attachment shall issue in the same manner and with the like effect as is provided by law in other actions." Rev. Laws 1910, § 3809.

And it is asserted that by virtue of this provision of the statute they have a lien on all the property in controversy here, not only for the payment of the rent due at the time of the institution of his action, but for all of the rent to accrue during the time of the lease contract between the parties here, and by reason thereof they are entitled to maintain said property in statu quo in order to enforce said lien. And in support of their position 24 Cyc. 1267, is cited:

"A landlord is entitled to an injunction to restrain the sale or removal of property from the demised premises by the tenant or his assignee if necessary for the protection of his lien. Thus an injunction will be granted at the instance of a landlord for such a purpose when it appears that the tenant is insolvent, but not as a rule if the tenant is solvent. Where, however, it is held that a landlord's lien exists for all of the rent to accrue during the term of the lease as well as the rent accrued. the landlord is entitled to an injunction, although the tenant is not insolvent, since, the rent not being due, he has no remedy at law for the protection of his lien. Injunction is also the proper remedy to enforce a landlord's lien upon property found upon the rental premises as against execution creditors of the tenant who are endeavoring to sell it to satisfy their debts."

It is further asserted by the defendants in error that the purpose of the petition here and the injunction sought was to restrain the plaintiffs in error from removing or attempting to remove their property from

the leased premises during the term of the lease, and that therefore an injunction will lie to prevent the breach of an implied negative covenant, and in support thereof 22 Cyc. 845, is cited, as follows:

"Where the contract is negative in form, requiring a party to refrain from doing certain things, injunction is the appropriate equitable remedy. Thus a contract not to disclose information, not to remove machinery, or pillars of coal from a mine, * * * will be enforced by enjoining a breach."

And at page 846 thereof is cited:

"A contract affirmative in form often involves a negative in substance, and in such case the court will import the negative quality and enjoin acts in breach of the contract, in cases where an injunction is otherwise proper. The test is not in the form of the language used, but in the quality of the acts required."

Also Bispham, in his Principles of Equity (7th Ed.), says as follows:

"A negative quality will sometimes be imported into an affirmative covenant, and relief afforded by injunction. * * *"

And it is further asserted by them that the aforesaid injunction asked for is not necessarily to compel specific performance of the contract in question, but simply to prevent the plaintiffs in error from the performance of acts which would lessen or destroy executed contractual rights which the plaintiffs have acquired. We do not think these contentions of the defendants in error are applicable to the instant case. The contract between the parties does not reserve a lien on any of the property for the purpose of securing the rent. In the absence thereof, in order for the defendants in error to successfully maintain their position that they are entitled to a lien upon this property to secure the payment of the rent, they must be able to point to some statute entitling them to the same, and that they come within the provisions of said statute.

As we view the statute in question, the same does not confer upon the defendants in error the right to a lien upon this property, but merely affords them an additional ground of attachment whereby they might go into a court of law and attach the property of the lessees in order to compel the payment of the rent due to them. The previous sections of the statute give to the landlord the rent upon crops growing or made on the premises to secure any rent due from farming land, but the defendants in error do not come within the provision of this statute. Our attention has

not been called to any provision of the statute giving to the defendants in error any specific lien upon this property to secure the payment of rents; hence the authorities cited by them do not apply.

Underhill on Landlord and Tenant, vol. 2, p. 759, says:

"In conclusion it may be said that, while an injunction will be granted to prevent a prohibited use of the premises, equity will not interfere to compel a tenant to use the premises in the manner to which his use has been restricted by the lease. For generally equity will not decree the specific performance of a contract which requires the exercise of skill and good faith on the part of the lessee, or where a performance of a covenant by him would require such a supervision by a court, or by an officer of the court as would make it unpracticable for the court to enforce the covenant. So, generally, where the performance of the covenant to use the building demised for a certain purpose involves the continuous performance of action on the part of the lessee which must be supervised and which he may at any moment cease to perform, equity will not interfere, and will not under such circumstances compel the lessee by mandatory injunction to perform his covenant."

In R. & H. v. Mitchell Bros., 167 Ala. 475, 52 South. 423, 140 Am. St. Rep. 52, the court says:

"Equity will only decree specific performance when it can dispose of the subject-matter by a decree capable of present enforcement, and can not award specific performance of a continuous duty extending over a series of years. * * * An injunction is granted in a suit for specific performance only as incidental to the execution of the decree; and, where the decree of specific performance cannot be enforced an injunction will not be grated."

It will be noticed here that it is not contended that the lessees are insolvent or that the defendants in error cannot collect their rent by an action at law. To restrain the plaintiffs in error from removing the hotel furniture from the building would not of itself continue the hotel in operation, and hence the same would not give the defendants in error the relief which they demand, and it would be a task which the court could not undertake to compel them to operate the hotel until the termination of this lease. Other furniture could be procured by the defendants in error with which to operate this hotel, as it is evident that the furniture in the hotel at the time could be replaced with other fur-

niture, and the hotel operated just as well. Assuming that the allegations of the petition are sufficient to make B. C. Beane a party defendant and liable for the acts of those charged to be his partners, we are still of the opinion that under the allegations of the petition the defendants in error were not entitled to the relief prayed for therein, inasmuch as there is no allegation of insolvency on the part of the lessees, nor is it shown that the defendants in error have a lien upon this property which is necessary to protect by injunction.

The judgment of the lower court therefore is reversed, and this cause remanded, with directions to the trial court to sustain a demurrer to the petition filed in this action.

By the Court: It is so ordered.